# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13-42560 |
| | ) | |
| **STEVEN JOHN PANKO,** | ) | Chapter 7 |
| | ) | |
| **Debtor.** | ) | Hon. Timothy A. Barnes |
| | ) | Hearing Date:  September 7, 2016 |
| | ) | Hearing Time: 10:30 a.m. |

## COVER SHEET FOR FIRST AND FINAL APPLICATION OF SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE PERIOD OF DECEMBER 31, 2013 THROUGH CLOSING OF THE CASE

Name of Applicant:                                    Seyfarth Shaw LLP

Authorized to Provide
Professional Services to:                          Chapter 7 Trustee Gus A. Paloian

Date of Appointment:                              February 11, 2014, retroactive to December 31, 2013

Period for which Compensation
and Reimbursement is Sought:              December 31, 2013 through case closing

Amount of First and Final
Compensation Sought:                            $48,751.50

Amount of First and Final Expense
Reimbursement Sought:                          $   520.40

This is an:          Interim          __X__   First and Final Application.     Prior Applications:  None

Dated: August 1, 2016                          Respectfully submitted,

                                                          GUS A. PALOIAN, not individually or
                                                          personally, but solely in his capacity as the
                                                          Chapter 7 Trustee of Debtor's Estate

                                                          By:/s/ Bret M. Harper                                    
                                                              Gus A. Paloian (6188186)
                                                              Bret M. Harper (6299968)
                                                              SEYFARTH SHAW LLP
                                                              131 South Dearborn Street
                                                              Suite 2400
                                                              Chicago, Illinois 60603
                                                              Telephone:  (312) 460-5000
                                                              *Counsel to Chapter 7 Trustee Gus A. Paloian*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13-42560 |
| | ) | |
| **STEVEN JOHN PANKO,** | ) | Chapter 7 |
| | ) | |
| **Debtor.** | ) | Hon. Timothy A. Barnes |
| | ) | Hearing Date:  September 7, 2016 |
| | ) | Hearing Time: 10:30 a.m. |

**FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS  COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR
THE PERIOD FROM DECEMBER 31, 2013 THROUGH CLOSE OF THE CASE**

Pursuant to Sections 105(a) and 330 of the United States Bankruptcy Code, 11 U.S.C. §§
101 through 1330, *as amended* (the "Bankruptcy Code"), Seyfarth Shaw LLP ("Seyfarth"), as
counsel to Gus A. Paloian, not individually or personally, but solely in his capacity as the duly-
appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of the above-
captioned debtor (the "Debtor"), hereby submits its First and Final Application for
Compensation and Reimbursement of Expenses (the "Application") for legal services performed,
and expenses incurred, during the period from December 31, 2013 through the closing of the
case (the "Application Period").  In support of this Application, Seyfarth respectfully represents,
as follows:

## I.  INTRODUCTION

1. Seyfarth makes this Application pursuant to:  (A) Sections 105(a) and 330 of the
Bankruptcy Code;  (B) Rule 2016 of the Federal Rules of Bankruptcy Procedure (singularly, a
"Rule";  collectively, the "Rules");  (C) certain applicable provisions of the Guidelines for
Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11
U.S.C. § 330, adopted by the Office of the United States Trustee (the "Guidelines");  (D) Rule

5082-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern

District of Illinois (the "Court");  (E) that certain Order of the Court entered in the above-

captioned case (the "Case") on February 11, 2014, authorizing Seyfarth's retention as counsel to

the Trustee retroactive to December 31, 2013;  and (F) other applicable case law.

2.       In making this Application, Seyfarth respectfully seeks an Order of this Court

awarding:  (1) final allowance of compensation in the amount of $48,751.50 for professional

services rendered by Seyfarth on behalf of the Trustee during the Application Period;  and (2)

final reimbursement of actual and necessary expenses in the amount of $520.40 incurred by

Seyfarth in rendering such professional services to the Trustee in the Case.

## II.  JURISDICTION

3.       This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating

Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue of

this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and

(b)(2)(A) and/or (O).

## III.  BACKGROUND

4.       On October 31, 2013, the Debtor filed a petition for relief under Chapter 7 of the

United States Bankruptcy Code, 11 U.S.C. §§ 101 through 1330, as amended (the "Bankruptcy

Code"), thereby commencing the above-captioned case (the "Case").

5.       On November 14, 2013, the Debtor filed his schedules of assets and liabilities and

his Statement of Financial Affairs (collectively and, as amended, the "Schedules").  (*See* Dkt.

Nos. 14, 15.)

6.     On December 31, 2013, Gus A. Paloian was appointed as Chapter 7 Trustee in the Case.  (*See* Dkt. No. 19.)

7.     The Schedules disclose forty-seven (47) entities in which the Debtor possesses, or possessed, an interest, (*see* Schedule B,  No. 18; Statement of Financial Affairs, Dkt. No. 15), which are, or were, in the businesses of commercial real estate, residential real estate, and construction.  Thirty-one of the Debtor's business entities have been dissolved and are no longer active entities.

8.      The Debtor's Estate includes ownership interests (collectively, the "Equity Interests ) in the following entities, which remain active (collectively, the "Entities"):  Antioch BB LLC; Salina Partners LLC; Guinness/Wheaton, LLC; Guiness/Wheaton II, LLC; Ike Builders LLC; V-Land Antioch Marketplace LLC; V-Land Bloomingdale Army Trail LLC; V-Land Chicago Canal LLC; V-Land Corporation; V-Land Chicago 95th LLC; V-Land Lombard Highland LLC; V-Land Management LLC; V-Land Mokena LLC; V-Land Salina LLC; V-Land South Elgin, LLC; and V-Land Warrenville, LLC.  The Debtor's equity interests in the Entities are collectively referred to herein as the "Equity Interests."

9.     The following two creditors asserted security interests in certain of the Equity Interests:  (i) Banner One, LLC asserts security interest in V-Land Bloomingdale Army Trail LLC and V-Land Chicago Canal LLC, pursuant to a certain charging order; and (ii) Bridgeview Bank Group asserts a security interest in V-Land Chicago 95th LLC, pursuant to a certain pledge agreement (collectively, the "Security Interests").

10.     The Debtor's Schedules disclose the Debtor's interest in the following liquidated debts (collectively, the "Liquidated Debts"):  (i) a credit card refund from Citi in the amount of

$102.77, and (ii) a sales commission due from V Land Corporation for prepetition brokerage

services in the amount of $16,600.20.  (See Schedule B, No. 13.)

## IV.  SUMMARY OF SERVICES RENDERED, AND EXPENSES INCURRED, BY SEYFARTH

### A.  Overview

11.     This Application is the first and final application for compensation and expense

reimbursement that Seyfarth has filed in this Case.

12.     To date, Seyfarth's services to the Trustee and the Estate include the following:

(a) conduct initial review and analysis of the Debtor's books and records, including but not

limited to transactional documents, corporate governance records, notes, mortgages, and

guaranties related to entities that are, or were, owned or controlled by the Debtor; (b) conduct

review of Debtor's schedules and statement of financial affairs and investigate potential cause

for objection to certain claimed exemptions; (c) preparation, filing and appearance in Court on

application to retain Trustee's accountant; (i) preparation, filing and appearance in Court on

application to retain Trustee's counsel; (j) conduct analysis of the claims filed in the Debtor's

bankruptcy case and resolve claims objections; (k) conduct initial investigation of possible sale

of LLC interests; and (l) extensive settlement negotiations with the Debtor.

13.     During the Application Period, Seyfarth has:  (i) provided legal services to the

Trustee in the amount of $48,751.50 (the "Fees"), and (ii) advanced costs in the amount of

$520.40 (the "Expenses") in connection with the legal services that it has provided to the

Trustee.

14.     The following table consists of a breakdown of the amount of Fees incurred by

each Seyfarth professional, including each such professional's:  (i) title, (ii) hourly rate, (iii) total

hours expended in providing legal services in the Case, and (iv) the value attributable to such

legal services:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2013 $625.00<br>2014 $650.00<br>2015 $685.00<br>2016 $695.00 | 37.20 | $24,259.00 |
| James B. Sowka | Associate | 2013 $405.00<br>2014 $430.00<br>2015 $445.00<br>2016 N/A | 5.10 | $2,125.50 |
| Christopher J. Harney | Associate | 2013 $350.00<br>2014 $375.00<br>2015 $385.00<br>2016 N/A | 1.30 | $487.50 |
| Bret M. Harper | Associate | 2013 $305.00<br>2014 $330.00<br>2015 330.00<br>2016 N/A | 25.70 | $8,481.00 |
| Michael Ripani | Associate | 2013 $275.00 | 7.60 | $2,090.00 |
| Andrew A. Connor | Paralegal | 2014 $295.00 | 1.90 | $560.50 |
| Jennifer M. McManus | Paralegal | 2013 $270.00<br>2014 $285.00<br>2015 $300.00<br>2016 $315.00 | 35.30 | $10,398.00 |
| Julie Ziegler | Case Assistant | 2013  $90.00<br>2014 $100.00<br>2015 $100.00<br>2016 N/A | 3.70 | $350.00 |
| **TOTAL:** | | | **117.80** | **$48,751.50** |

15.     Biographies for the attorneys listed above who performed the bulk of the services in this matter describing their qualifications and areas of expertise are attached hereto as **Exhibit 1**.

16.     During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

17.     Seyfarth has voluntarily reduced its fees in the amount of $3,875.00.

18.     All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

19.     Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

### B.  Time and Expense Records

20.     Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

21.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 2** and which are incorporated herein by reference, set forth in detail:  (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, and (iii) the amount of time spent on the services in one-tenth of one hour increments.

22.     Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 3** and incorporated herein by reference.

### C.  Breakdown of Fees by Category of Services Rendered

23.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into five (5) categories, as follows:  (i) Case Administration;  (ii) Claims Review and Analysis;  (iii) Investigation of Estate Claims/Adversary Proceedings/Litigation; (iv) Sale of Assets; and (v) Fee Applications.

### CASE ADMINISTRATION (27.50  HOURS VALUED AT $12,250.50)

24.     During the Application Period, Seyfarth performed 27.50 hours of services having a value of $12,250.50 on behalf of the Trustee on matters related to case administration including:

    A.     Preparing the applications to retain counsel and accountant and motion to extend time to object to discharge under 11 U.S.C. § 727;

    B.     Appearing in Court for hearings on, among other things,  the retention applications and the  motion to extend time to object to discharge under 11 U.S.C. § 727;

    C.     Conferences, teleconferences, and/or correspondence regarding assets and liabilities of the Estate, generally;

    D.     Review and analysis of Estate books, records and various corporate and financial documentation recovered from the Debtor in order to determine veracity of same;

E.    Communications with creditors and other parties-in-interest regarding case status, processes, procedures and effects of the bankruptcy proceedings; and,

F.    Performing general ministerial tasks necessary for effective case administration including, but not limited to, coordinating conflicts searches and tracking and analyzing related results, and attention to pending Debtor bankruptcy and litigation proceedings.

25.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2013 $625.00<br>2014 $650.00<br>2015 $685.00<br>2016 $695.00 | 10.60 | $6,890.00 |
| James B. Sowka | Associate | 2013 $405.00<br>2014 $430.00<br>2015 $445.00<br>2016 N/A | 4.00 | $1,652.50 |
| Bret M. Harper | Associate | 2015 330.00 | 1.30 | $429.00 |
| Jennifer M. McManus | Paralegal | 2013 $270.00<br>2014 $285.00<br>2015 $300.00<br>2016 $315.00 | 11.30 | $3,249.00 |
| Julie Ziegler | Case Assistant | 2013 $90.00<br>2014 $100.00<br>2015 $100.00<br>2016 N/A | .30 | $30.00 |
| **TOTAL:** | | | **27.50** | **$12,250.50** |

**CLAIMS REVIEW AND ANALYSIS (18.00 HOURS VALUED AT $5,881.50)**

26.     During the Application Period, Seyfarth performed 18.00 hours of services having

a value of $5,881.50 on behalf of the Trustee on matters related to claims review and analysis

including:

A.      Conduct initial review and analysis of claims and prepare related

spreadsheet; and

B.      Preparation and filing of motions to modify claims, agreed orders and

omnibus claims objection.

27.     A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2013 $625.00<br>2014 $650.00<br>2015 $685.00<br>2016 $695.00 | 2.80 | $1,890.00 |
| Bret M. Harper | Associate | 2013 $305.00<br>2014 $330.00<br>2015 330.00<br>2016 N/A | 3.10 | $1,023.00 |
| Jennifer M. McManus | Paralegal | 2013 $270.00<br>2014 $285.00<br>2015 $300.00<br>2016 $315.00 | 9.20 | $2,698.50 |
| Julie Ziegler | Case Assistant | 2013  $90.00<br>2014 $100.00<br>2015 $100.00<br>2016 N/A | 2.90 | $270.00 |

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| TOTAL: | | | 18.00 | $5,881.50 |

### INVESTIGATION OF ESTATE CLAIMS/ADVERSARY PROCEEDINGS/LITIGATION (33.30 HOURS VALUED AT $15,132.00)

28.    During the Application Period, Seyfarth performed 33.30 hours of services having a value of $15,132.00 on behalf of the Trustee on matters related to investigation of Estate claims and adversary proceedings and litigation including:

    A.    Conducting factual investigation into financial affairs of the Debtor and potential claims of the Estate;

    B.    Preparation and filing of objection to exemption for broker commission;

    C.    Communications/discussions with counsel regarding settlement of objection to exemption for broker commission;

    E.    Investigation of security interests and LLC interests regarding potential litigation; and

    F.    General settlement meetings, discussions and conferences with Debtor's counsel regarding LLC interests.

29.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2013 $625.00<br>2014 $650.00<br>2015 $685.00<br>2016 $695.00 | 14.30 | $9,295.00 |
| James B. Sowka | Associate | 2013 $405.00<br>2014 $430.00<br>2015 $445.00<br>2016 N/A | .90 | $387.00 |
| Christopher J. Harney | Associate | 2013 $350.00<br>2014 $375.00<br>2015 $385.00<br>2016 N/A | 1.30 | $487.50 |
| Bret M. Harper | Associate | 2013 $305.00<br>2014 $330.00<br>2015 330.00<br>2016 N/A | 5.50 | $1,815.00 |
| Michael Ripani | Associate | 2013 $275.00 | 7.60 | $2,090.00 |
| Andrew A. Connor | Former Paralegal | 2014 $295.00 | .30 | $88.50 |
| Jennifer M. McManus | Paralegal | 2013 $270.00<br>2014 $285.00<br>2015<br>2016 | 3.40 | $969.00 |
| **TOTAL:** | | | **33.30** | **$15,132.00** |

### SALE OF ASSETS (27.60 HOURS VALUED AT $12,006.00)

30.    During the Application Period, Seyfarth performed 27.60 hours of services having a value of $12,006.00 on behalf of the Trustee on matters related to the sale of assets, including:

A.    Conduct initial investigation of possible sale of LLC interests; and

B. Preparation and filing of sale documents and conduct sale of LLC

interests.

31. A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Gus A. Paloian | Partner | 2013 $625.00<br>2014 $650.00<br>2015 $685.00<br>2016 $695.00 | 9.50 | $6,184.00 |
| James B. Sowka | Associate | 2013 $405.00<br>2014 $430.00<br>2015 $445.00<br>2016 N/A | .20 | $86.00 |
| Bret M. Harper | Associate | 2013 $305.00<br>2014 $330.00<br>2015 330.00<br>2016 N/A | 15.80 | $5,214.00 |
| Andrew A. Connor | Paralegal | 2014 $295.00 | 1.60 | $472.00 |
| Julie Ziegler | Case Assistant | 2014 $100.00 | .50 | $50.00 |
| **TOTAL:** | | | **27.60** | **$12,006.00** |

**FEE APPLICATIONS (11.40 HOURS VALUED AT $3,481.50)**

32. During the Application Period, Seyfarth performed 11.40 hours of services worth

a value of $3,481.50 in preparing Seyfarth's first and final fee application and Trustee's first and

final fee application. Seyfarth performed 8.70 hours, with a value of $2,661.00, in the

preparation of Seyfarth's fee application, which represents five percent (5%) of the total fees

sought for services rendered during the Application Period.

33.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | 2013 $270.00<br>2014 $285.00<br>2015 $300.00<br>2016 $315.00 | 11.40 | $3,481.50 |
| **TOTAL:** | | | **11.40** | **$3,481.50** |

### D.  Incurred Expenses

34.     As set forth in attached **Exhibit 3**, Seyfarth advanced 520.40 in Expenses on behalf of the Estate during the Application Period.

35.     A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

36.     Additionally, Seyfarth advanced out-of-pocket expenses on behalf of the Estate for online legal research conducted through Pacer, Shepard's, Law Review and Lexis services. The charges for these expenses are *actual and at cost*.

37.     In this respect, there is no mark-up of the online legal research charges and no profit derived by Seyfarth from them.  Seyfarth ordinarily and customarily passes its discount on such services *through to the client*—in this instance, the Estate—billing the client only what Seyfarth is actually charged for use of the online resources.

38.     The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

39.     Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate, at cost.

## V.  **RELIEF REQUESTED**

40.     Seyfarth respectfully requests that the Court:  (i) allow and award it on a final basis (1) the Fees, consisting of $48,751.50 for legal services rendered to the Trustee, and (2) the Expenses, in the amount of $520.40, incurred in relation to such services (collectively, the "Requested Fees and Expenses");  and (ii) authorize the Trustee to make prompt payment of the Requested Fees and Expenses to Seyfarth from the Debtor's Estate.

41.     A proposed order providing for the requested relief is attached hereto for the Court's consideration.

## VI.  **BASIS FOR THE REQUESTED RELIEF**

### A.  **Compensation Standards**

42.     Pursuant to Section 331 of the Bankruptcy Code, a professional person employed under Section 327 may generally apply for interim compensation from a bankruptcy court.  See 11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C.

43.     § 330(a)(1)(A).

44.     In determining the "extent and value of compensation," this Court has endorsed and applied the "'lodestar' approach—multiplying the number of actual and necessary hours reasonably expended by a reasonable hourly rate[.]" *In re* Wildman, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987) (Schmetterer, J.);  accord *In re* UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir. 1993) (lodestar approach provides fair compensation under Section 330);  see also City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The

'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.  We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]").

45.     To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has "emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same compensation as they would earn in performing similar services outside the context of bankruptcy."[1] *In re* UNR Indus., Inc., 986 F.2d at 210 (emphasis added).  The statutory aim is twofold:  (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  UNR Indus., Inc., supra;  see also *In re* Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the law.") (citing legislative history to Section 330).

46.     As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate."  Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993);  see Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (*In re* Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases."  In re UNR Indus., Inc., 986 F.2d at 208-09;  see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

47.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate . . . is considered to be the presumptive market rate." Small, 264 F.3d at 707.  Moreover, "[t]he lawyer's regular rate is *strongly presumed* to be the market rate for his or her services." Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S. 1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001);  see Moriarty v. Svec, 429 F.3d 710, 718 (7th Cir. 2005) (quoting same);  see also Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the meanest villain', *is* the market rate for that lawyer's services.") (emphasis added and quoting Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom. Mason & Dixon Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996).

48.     Under this principle, "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." Gusman, 986 F.2d at 1150; accord *In re* Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.) ("Generally, so long as the rates being charged are the applicant's normal rates charged in bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of reasonableness.").

49.     "Only if an attorney is unable to provide evidence of her actual billing rates should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the community charge paying clients for similar work.'" Mathur v. Board of Trs. of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999));  see also Gusman, 986 F.2d at 1151 ("the ability to identify a different

average rate in the community" is an impermissible reason to depart from an attorney's billing

rate).

50.     Accordingly, because Seyfarth bills the vast majority of its time at a set rate for

paying clients and spends only a very small percentage of time on cases covered by fee-shifting

statutes, "there is a strong presumption that such counsel could have billed out remaining time at

the rate normally charged."  _In re_ Farley, Inc., 156 B.R. at 211.

51.     Additionally, under generally accepted standards, if the services of an attorney

employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be

compensable.  See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (_In re_ Pro-Snax Distributors,

Inc.),157 F.3d 414, 421 (5th Cir. 1998);  _In re_ Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir.

1996);  2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999);  cf.

11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this same context, "[n]ecessary services are those that aid the

professional's client in fulfilling its duties under the Code."  _In re_ Ben Franklin Retail Store, Inc.,

227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

52.     Thus, the determination of benefit to the Estate is not constrained to a dollar-for-

dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into

the Estate in order to justify equivalent compensation to counsel.  See _In re_ Lifschultz Fast

Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have

always included services that aid in the administration of the case and help the client fulfill duties

under bankruptcy law, whether or not those services result in a monetary benefit to the estate.");

accord _In re_ Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill.

Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the

economic impact on the estate of actions taken should be considered in the 'benefit to the estate'

analysis"); _In re_ Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same); see,

e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or interim trustee) performs necessary

services when he carries out the duties set forth in § 704 of the Code."); JMP-Newcor Int'l, Inc.

v. Seyfarth, Shaw, Fairweather & Geraldson (_In re_ JMP-Newcor Int'l, Inc.), 1998 U.S. Dist.

LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm

for advising committee in reasonable way and in good faith despite lack of direct monetary

benefit to debtor and estate).

53.     Instead, other factors, such as "whether the services rendered promoted the

bankruptcy process or administration of the estate in accordance with the practice and procedures

provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of

bankruptcy case and related adversary proceedings," also support awards of compensation. _In re_

Spanjer Bros., Inc., 191 B.R. at 748.

54.     As previously stated, the legal services for which Seyfarth requests allowance and

payment of compensation relate to the Application Period, and were rendered in connection with

the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee

during that time.

55.     Seyfarth respectfully submits that such legal services have, in all respects, been

reasonable, necessary, and beneficial to the Estate.  In this connection, these services were

performed within a reasonable amount of time commensurate with the complexity, importance,

and nature of the matters which they concerned.

56.     Further, they promoted the bankruptcy process and the administration of the

Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the

Bankruptcy Code and Rules.

57.     For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

58.     Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $492.54.

59.     During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from:  (A) $275.00 to $695.00 for attorneys, and (B) $90.00 to $315.00 for paralegals or para-professionals.  Based upon all of the foregoing, Seyfarth respectfully submits that the fair and reasonable value of the legal services that it rendered during the Application Period is $48,751.50.

60.     In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

61.     Moreover, it is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

62.     In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

63.     Finally, and with respect to whether Seyfarth has demonstrated skill and experience in the bankruptcy field pursuant to 11 U.S.C. § 330(a)(3)(E) (2006), Seyfarth has

attached its Attorney Biographical Information as Exhibit 1.  The Attorney Biographical

Information sets forth the qualifications of the Seyfarth attorneys listed herein, including their

demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and

in representation of clients in matters nationwide.

## B.  Expense Reimbursement Standards

64.     With respect to reimbursing expenses, the Court may award a professional person

"reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

65.     "An expense is necessary if it was incurred because it was required to accomplish

the proper representation of the client."  *In re* Spanjer Bros., Inc., 191 B.R. at 749;  see *In re*

Wildman, 72 B.R. at 731.

66.     In this connection, Seyfarth has requested reimbursement only for actual and

necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these

expenses were incurred because they were required to accomplish the proper representation of

the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated,

Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

67.     Seyfarth submits that the Expenses are reimbursable and do not constitute

"overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into
> the normal hourly rate charged by the billing professional.  Convent Guardian,
> 103 Bankr. at 939;  Wildman, 72 Bankr. at 731.  Overhead expenses include "all
> continuous administrative or general costs or expenses incident to the operation of
> the firm which cannot be attributed to a particular client or cost."  *In re* Thacker,
> 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47
> Bankr. at 584)[2].

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995)
(Squires, J.);  see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby,
J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable.");  see

68.     In contrast, Seyfarth charges for its out-of-pocket expenses only, including the

incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As

previously discussed, the incurred Expenses included herein are neither taken into consideration

in determining, nor built as "overhead" into, Seyfarth's hourly rates.

69.     Such "user fee" expense billing closely adheres to the Seventh Circuit's market

rate billing approach.  In this respect, the Seventh Circuit's market approach to compensation

extends equally to the reimbursement of expenses, including those for online research.  See _In re_

_Hunt's Health Care, Inc._, 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993);  accord _In re_ Hillsborough

Holdings Corp., 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a relevant factor in

setting compensation for services under [330](a)(1), it would logically seem also to be a relevant

factor in determining what categories to treat as reimbursable expenses under (a)(2).").

70.     For example, in Continental Illinois Securities, supra, the Seventh Circuit

reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket
> expenses of using a computerized legal research service (LEXIS).  He thought
> those expenses should be part of the lawyers' overhead.  This was another clear
> error.  If computerized research expenses were customarily treated in this fashion,
> lawyers' hourly rates would be even higher than they are, requiring an adjustment
> in the lodestar.  *But the more important point is that the market—the paying,*
> *arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just*
> *as it reimburses their paralegal expenses, rather than requiring that these items*
> *be folded into overhead.*  Markets know market values better than judges do.  And
> as with paralegals, so with computerized research:  if reimbursement at market
> rates is disallowed, the effect will be to induce lawyers to substitute their own,

_____

also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006)
("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to
the operation of a business that cannot be attributed to a particular client or cost.");  see, e.g., Stroock &
Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398,
1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such*
*as rent, heat, and the like*, that cannot readily be attributed to a particular case—are not separately
compensable as reimbursable expenses.") (emphasis added)

more expensive time for that of the paralegal or the computer, 962 F.2d at 570 (emphasis added);  accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir. 1991) ("The attorneys also claim that the court erred in excluding the roughly $10,000 expended in computer-assisted research.  The court felt that the expense 'is part of the amount allowed for attorney's fees.'  *We must reverse the district court here*.  Computer-assisted research fees—so long as reasonably incurred—in theory reduce the number of attorney hours otherwise needed for (presumably) more time-consuming manual research and are therefore compensable[. . . . as] expenses[.]") (emphasis added).

71.     The Seventh Circuit has remained consistent on this subject and has repeatedly required attorney reimbursement for computerized legal research charges.  See, e.g., Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn our attention to the award of costs, we consider MTC's request that the costs of computerized legal research be subtracted from the award.  *MTC claims that these expenses are better characterized as overhead in the same way that maintenance of a law firm library is.  We reject this claim*.") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996).

72.     Accordingly, lower courts in this District—including numerous judges of this Court—have adhered to this controlling precedent.  See, e.g., Shula v. Lawent, 2004 U.S. Dist. LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal research charges" as "costs" that were "both reasonable and necessary");  Stamm v. Provident Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett, J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a reasonable expense of litigation.");  *In re* Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992) (Squires, J.) (allowing full reimbursement of Lexis expense), aff'd sub nom. Price v. United States (*In re* Price), 42 F.3d 1068 (7th Cir. 1994);  *In re* Met-L-Wood Corp., 103 B.R. 972, 977 (Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as "'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990);  *In re* Prairie Cent. Ry.

Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the

Court to allow reimbursement of Lexis  and Westlaw research charges); *In re* Wildman, 72 B.R.

at 732 ("This Court adopts the view that computer research time that is both necessary and

attributable to a particular client *or* case is reimbursable under Section 330(a)(2).") (emphasis in

the original); *In re* UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), *Order Approving*

*Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And*

*Payment Of Compensation And Reimbursement Of Expenses* (Docket No. 15670) (allowing full

reimbursement of $8,085.93 in online legal research charges); *In re* Eagle Food Centers, Inc.,

Case No. 03-15299-CAD (Doyle, J.), *Order Approving Third And Final Application Of Skadden,*

*Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And*

*Reimbursement Of Expenses* (Docket No. 1136) (allowing full expense reimbursement of

$21,888 in "Computer Legal Research" during case period) (unpublished decision); *In re*

Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), *Order Approving Final Application Of*

*Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And*

*Reimbursement Of Expenses* (Docket No. 6987) (allowing expense reimbursement of

$139,934.07, including Westlaw and Lexis charges); *In re* Wickes, Inc., Case No. 04-02221-

BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To*

*DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And*

*Payment Of Interim Compensation And Reimbursement Of Expenses* (Docket No. 2935)

(allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

73.     Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid

down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs

containing a description so detailed as to make it impossible economically to recover [ ] costs[,

but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records."

Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir.

1991).

74.     In seeking reimbursement for the Expenses herein, Seyfarth has made every

attempt to fully comply with these dictates.

## VII.  **NOTICE**

75.     Twenty-one days' notice of this Application, and service of the Application, has

been provided to the Office of the United States Trustee, in care of M. Gretchen Silver.

76.     Seyfarth respectfully requests that the above-notice (the "Notice") be deemed

adequate and that the Court find that no other or further notice is necessary.

## VIII.  **NO PRIOR REQUEST**

77.     No prior request for the relief requested by this Application has been made to this

Court or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.     Finding Notice of the Application sufficient as given and that no other or

further notice is necessary;

B.     Allowing and awarding Seyfarth on a final basis the Requested Fees and

Expenses;

C.     Authorizing the Trustee to make payment of such Fees and Expenses to

Seyfarth from the Estate, and

      D.     Granting such other and further relief as this Court deems just and

appropriate.

Dated:  August 1, 2016                         Respectfully submitted,

                                      GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 7 Trustee of Debtor's Estate

By:/s/ Bret M. Harper
    Gus A. Paloian (6188186)
    Bret M. Harper (6299968)
    SEYFARTH SHAW LLP
    131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
    Telephone:  (312) 460-5000
    *Counsel to Chapter 7 Trustee Gus A.
    Paloian*

# EXHIBIT 1

SEYFARTH
SHAW



## Gus A. Paloian
*Partner*
Chicago
Direct: (312) 460-5936
Fax: (312) 460-7936
gpaloian@seyfarth.com | vCard

## Biography

**Practices & Sectors**

Bankruptcy,
Workouts &
Business
Reorganization

Bankruptcy Litigation

Distressed
Transactions

Non-Bankruptcy
Remedies

Commercial Litigation

Real Estate

Mr. Paloian is a partner with a practice emphasis in creditors' rights, bankruptcy, and financial litigation. Prior to joining the firm in 1985, Mr. Paloian clerked for the Honorable Frederick J. Hertz, United States Bankruptcy Judge for the Northern District of Illinois, Eastern Division.

In bankruptcy matters, Mr. Paloian often represents national banks and finance companies enforcing their remedies and defending their rights. He represents financial institutions in cases involving debtors in various segments of the manufacturing and service industries and has extensive experience representing financial institutions in real estate bankruptcies, including health club/sporting facilities, office buildings, retail, manufacturing, and warehousing facilities. Mr. Paloian also represents companies in various industries that have experienced financial problems and seek to restructure their financial problems under the Bankruptcy Code. Mr. Paloian was the lead bankruptcy counsel for the Chicago South Shore and South Bend Railroad in its bankruptcy proceedings. He also has extensive experience representing trustees in complex bankruptcy cases. Mr. Paloian also serves as a bankruptcy trustee and is a member of the Panel of Trustees for the Northern District of Illinois, Eastern Division.

### Education

- J.D., DePaul University College of Law (1984)
  *cum laude*
- B.A., Northwestern University (1981)
- Certified Lean Six Sigma Yellow Belt

### Admissions

- Illinois

### Affiliations

- American Bankruptcy Institute
- Turn Around Management Association
- National Association of Bankruptcy Trustees
- Chicago Bar Association (Bankruptcy Committee)
- Illinois Bar Association

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome

SEYFARTH
SHAW

- American Bar Association

## Representative Engagements

- *Buddha Entertainment, LLC v. Paloian*, 12 C 5059 (N.D. Ill. 2012)
- *Paloian v. Geneva Seal, Inc. (In re Canopy Fin., Inc.)*, 12 C 145, 12 C 147 (N.D. Ill. 2012)
- *In re River West Plaza-Chicago, LLC.*, 664 F.3d 668 U.S. App. (7th Cir. 2011)
- *Schwab v. River West-Chicago, LLC* (In re River West Plaza-Chicago, LLC.) 10 C 7277 (N.D. Ill 2011)
- *Paloian v. American Express Co. (In re Canopy Fin., Inc.)*, 11C 5360 (N.D. Ill. 2011)
- *Paloian v. Grupo Serla S.A. de C.V.*, 07 C 396 (N.D. Ill. 2010)
- *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688 U.S. App. (7th Cir. 2010)
- *In re Shethi*, 07 B 05886 (N.D. Ill. 2008)
- *Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation, Inc.)*, 01 B 31751 (N.D. Ill. 2006)
- *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761 U.S. App. (7th Cir. 2004)
- *In re Chavin*, 150 F.3d 726 U.S. App. (7th Cir. 1998)
- *In re 801 South Wells Street Limited Partnership*, 192 BR 718 (Bankr. N.D. Ill. 1996)
- *In re Sardo Corporation (Borock as Trustee v. Turner Construction Company)*, 1996 WL 362756 (Bankr. N.D. Ill. 1996)
- *Northern Trust v. VIII S. Michigan Assoc.*, 276 Ill. App. 3d 355, 657 N.E.2d 1095 (1st Dist. 1995)
- *Zerand-Bernal Group v. Cox*, 23 F.3d 159 U.S. App. (7th Cir. 1994)
- *In re VIII South Michigan Associates*, 145 B.R. 912 (N.D. Ill. 1992)
- *In Re: William Thomas Billings (Irving Federal Savings and Loan Assoc.)* 146 B.R. 431 (Bankr. N.D. Ill. 1992)
- *Home Savings Association of Kansas City, F.A. v. State Bank of Woodstock*, 763 F. Supp. 292 (N.D. Ill 1991)
- *In re William J. Stoecker (Citibank, N.A. v. Park Kenilworth Industries)*, 109 B.R. 321 (N.D. Ill. 1989)

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
SHAW



## James B. Sowka

*Partner*
Chicago
Direct: (312) 460-5325
Fax: (312) 460-7325
jsowka@seyfarth.com | vCard

## Biography

**Practices & Sectors**

**Bankruptcy, Workouts & Business Reorganization**

Bankruptcy Litigation

Debtor Representation

Non-Bankruptcy Remedies

Distressed Transactions

Commercial Litigation

Real Estate Litigation

Mr. Sowka is a partner in the Chicago office of Seyfarth Shaw LLP. He practices in the areas of bankruptcy law, creditor rights, receiverships, and commercial and real estate litigation in both federal and state court. Mr. Sowka represents debtors, secured lenders, trade creditors, insurers, chapter 7 and chapter 11 bankruptcy trustees, and preference and fraudulent transfer defendants among others. His bankruptcy litigation experience includes contested cash collateral hearings, plan confirmation hearings, and bankruptcy trustee elections, motions for the appointment of chapter 11 trustees and for conversion and dismissal of chapter 7 and 11 cases, claims objections, and denial of discharge and dischargeability actions. Mr. Sowka also advises employers with respect to the impact of bankruptcy filings on retirement and benefit plans, non-compete agreements, protection of trade secrets, and other matters.

Mr. Sowka has earned a Martindale-Hubbell Peer Review rating of AV Preeminent®. He is a member of the Seyfarth*Lean* initiative for landlord-tenant issues in retail bankruptcy cases. Seyfarth*Lean* adopts Lean Six Sigma methodologies through application of technology and a process-driven methodology that involves mapping the delivery of services in order to identify efficiencies and to better predict costs for our clients. In 2015, he was appointed for a two-year term on the Bankruptcy Court Liaison Committee for the Northern District of Illinois, which fosters communication and information sharing between the local bench and bar, as well as education programs in the district. In 2011, Mr. Sowka was selected to participate in the National Conference of Bankruptcy Judges Next Generation Program for up-and-coming bankruptcy attorneys.

Prior to joining the firm, Mr. Sowka worked as a trial attorney for the U.S. Department of Justice, Office of the U.S. Trustee in Chicago and Miami, Florida where he gained significant experience with bankruptcy asset sales, chapter 11 plan confirmations, chapter 11 trustee and examiner appointments, denial of discharge actions, and investigation and prosecution of bankruptcy fraud and abuse, including Ponzi schemes, bust-outs, and identity theft.

Mr. Sowka is also involved in the local community and currently serves as an officer and director for Friends of Pulaski, a not-for-profit organization that supports Pulaski International School - a public elementary school in Chicago offering an International Baccalaureate based curriculum.

## Education

- J.D., University of Arizona College of Law (2004)
- B.A., University of Illinois (1998)
  Phi Kappa Phi; College Honors

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH SHAW

## Admissions

- Florida
- Illinois

## Courts

- U.S. Court of Appeals for the Seventh Circuit
- U.S. District Court for the Northern District of Illinois
- U.S. District Court for the Southern District of Florida
- U.S. District Court for the Middle District of Florida

## Affiliations

Bankruptcy Court Liaison Committee, Northern District of Illinois
Committee Member (2015-2017)

Friends of Pulaski

- Officer and Director (2012-2015)

Chicago Bar Association

- Director, Young Lawyers Section (2011-2013)
- Co-Chair, Young Lawyers Section Bankruptcy Committee (2008-2011)

Bankruptcy Court Liaison Committee, Northern District of Illinois

- Representative of the Office of the U.S. Trustee (2007-2008)

American Bankruptcy Institute

## Representative Engagements

- Representation of unsecured creditors in chapter 7 dischargeability action based on RICO judgment exceeding $400 million.  Obtained favorable verdict on summary judgment.
- Representation of chapter 11 trustee with respect to operation and reorganization of commercial real estate holding company with ownership interests in more than 50 non-debtor entities and land trusts holding title to more than 70 parcels of real property. Negotiated settlements with various insiders resulting in recovery of more than $8 million in disputed pre-petition transfers of cash and other assets.
- Representation of chapter 7 trustee in wind-down of Ponzi scheme involving technology company with more than $100 million in claims.  Assisted in obtaining recoveries in excess of $80 million through prosecution and settlement of fraudulent transfer and breach of fiduciary duty actions and the sale of assets.
- Representation of global restaurant equipment manufacturer in state court receivership action initiated against restaurant equipment distribution company.  Obtained allowance of claims and favorable resolution of objections to sale of company.
- Representation of large, commercial bank in individual chapter 11 bankruptcy case involving over $100 million in real estate related claims.  Successfully obtained appointment of chapter 11 trustee and favorable settlement involving over $16.5 million in disputed state and federal income tax refunds.
- Representation of national insurance company in individual chapter 7 bankruptcy.  In case of first impression, obtained denial of debtor's claimed exemption in non-qualified ERISA Supplemental Executive Retirement Plan.

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
SHAW

- Representation of petitioning creditors in involuntary chapter 7 bankruptcy proceeding against defunct regional grocery store chain which resulted in entry of order for relief and commencement of chapter 7 bankruptcy case.

- Representation of large, commercial bank in $26 million single asset real estate bankruptcy. Prevailed in objecting to confirmation of debtor's chapter 11 plan following two-day trial; later secured confirmation of joint chapter 11 plan of liquidation with debtor, and obtained order recharacterizing $17.5 million insider claim as equity and successfully defended appeal to the Seventh Circuit Court of Appeals regarding same.

- Representation of chapter 7 trustee in wind-down of operating logistics and warehouse company with two facilities totaling over 615,000 sq. ft. in space, liquidation of inventory and personal property, and sale of real property.

- Representation of national insurance company in chapter 11 asbestos bankruptcy case involving contested plan confirmation which resulted in multimillion dollar settlement agreement.

- Representation of secured lender in $40 million single asset real estate bankruptcy. Obtained confirmation of joint plan of liquidation with chapter 11 trustee and sale of real property.

## Presentations

- "Professional Ethics in Bankruptcy" Chicago Bar Association Young Lawyers Section Joint Bankruptcy & Professional Responsibility Committee Meeting (April 18, 2014)

- "Commercial Real Estate in Distress" Chicago Bar Association Young Lawyers Section Bankruptcy Seminar (October 7, 2010)

- "Mortgage Fraud," presented by the Office of the United States Trustee, Chicago Bar Association Young Lawyers Section Bankruptcy Committee Meeting (2008)

## Publications

- Co-Author, "How Sports Authority's Bankruptcy Filing Impacts Landlords and Trade Creditors, and Creates Opportunities for Retailers," *One Minute Memo*, Seyfarth Shaw LLP (March 3, 2016)

- Co-Author, "Recharacterization: The Debate," *The Bankruptcy Strategist* (November 2013)

- Co-Author, "Seventh Circuit mandates an "auction process" in "new value" Chapter 11 plans," *Management Alert*, Seyfarth Shaw LLP (July 31, 2013)

- Co-Author, "Bankruptcy Court Applies Third Circuit test for addressing 'debt' versus 'equity' question." *One Minute Memo*, Seyfarth Shaw LLP (July 25, 2013)

- Author, "U.S. Supreme Court Resolves Circuit Split In Favor Of Secured Lenders' Credit-Bid Rights In Chapter 11 Bankruptcy Cases," *One Minute Memo*, Seyfarth Shaw LLP (June 4, 2012)

- Co-author, "Not All Retirement Plans Are Created Equal - ERISA Top-Hat Plans Constitute Property of the Bankruptcy Estate," *American Bankruptcy Institute Journal* (September 2011)

- Co-author, "Seventh Circuit Upholds Secured Lenders' Credit-Bid Rights In Chapter 11 Bankruptcy," *One Minute Memo*, Seyfarth Shaw LLP (July 15, 2011)

- Co-author, "Lenders' Right to Credit Bid Tested Before 7th Circuit," *The National Law Journal* (November 29, 2010)

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
        SHAW



## Christopher J. Harney
*Associate*
Chicago
Direct: (312) 460-5246
Fax: (312) 460-7246
charney@seyfarth.com | vCard

# Biography

**Practices & Sectors**

**Bankruptcy, Workouts & Business Reorganization**

Debtor Representation

Commercial Litigation

Non-Bankruptcy Remedies

Distressed Transactions

Bankruptcy Litigation

Real Estate Litigation

Appellate Advocacy

Securities & Financial Litigation

Fraud and Abuse

**Specialty Teams**

**White Collar Criminal Defense & Fraud Prevention**

White Collar, Internal Investigations, and False Claims Team

Corporate Internal Investigations

National Trial Team

Mr. Harney is a senior associate in the Litigation Department of Seyfarth Shaw LLP. He concentrates his practice on bankruptcy litigation, white collar matters, internal investigations (including sensitive legal and misconduct investigations involving senior executives and employees) and complex commercial disputes in both federal and state courts. In his bankruptcy practice, Mr. Harney serves as counsel for debtors, secured lenders, unsecured creditors, insurers, and chapter 7 and chapter 11 bankruptcy trustees. His commercial and general litigation practice includes the following sectors and practice areas: securities and financial services, breach of contract, shareholder derivative claims, breach of fiduciary duty, commercial foreclosures, antitrust, fraudulent transfers, requests for injunctive relief, real estate, construction law, forcible entry and detainer actions, premises-liability, intellectual property, and collection matters.

Mr. Harney has been selected as a "Rising Star" by Illinois Super Lawyers in 2014-2016. He was also the recipient of Award of Excellence in Pro Bono Service issued by the United States District Court of the Northern District of Illinois in conjunction with the Chicago Chapter of the Federal Bar Association. He is an active board member of the Young Professionals Board of the Chicago Bar Foundation, the charitable arm of the Chicago Bar Association and is one of the wrestling team representatives for the Graduate "Order of the C," an alumni association of the University of Chicago. He was the chair of Seyfarth Shaw's Associates Committee for the Investing In Justice Campaign in 2014 and has been an active member of the Associates Committee from 2013 to present. He also served as a co-chair for the Bankruptcy Committee of the Young Lawyers Section of the Chicago Bar Association from 2011 to 2014.

## Education

- J.D., University of Mississippi (2008)
  *cum laude*
  Member, Moot Court Team and Moot Court Membership Committee
  Moss Scholarship Recipient, 2006-2007
  Semifinalist in State of Mississippi Appellate Advocacy Competition

- B.A., University of Chicago (2004)
  Chicago Police/Fire Full-Tuition Merit Scholarship, 2000-2004
  Dean's List, 2000-2003

## Admissions

- Illinois

## Courts

- Illinois Supreme Court
- U.S. District Courts for the Northern District of Illinois
- U.S. Court of Appeals for the Seventh Circuit

## Affiliations

- Chicago Bar Association (Co-Chair, Young Lawyers Section Bankruptcy Committee

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

**SEYFARTH SHAW**

(2011-2014))

- Chicago Bar Foundation (Member, Young Professionals Board (2011-present))
- University of Chicago's Order of the C (Wrestling Team Representative (2011-present))
- American Bankruptcy Institute

## Presentations

- Moderator, "What Every Bankruptcy Practitioner Should Know About Exceptions to Discharge (§ 523) and Denial of Discharge (§ 727) (June 2012)
- Co-presenter, "Practice Pointers in Preference Litigation," Chicago Bar Association (April 2011)
- Presenter, "Underwater Stock Options," Legal Seminar sponsored by the Illinois Paralegal Association, Chicago, IL (May 2009)

## Publications

- "Austin, Texas Paves the Way to Expansion of Green Building," *Green Space Today* (April 2009)

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

**SEYFARTH SHAW**



### Bret M. Harper
*Associate*
Chicago
Direct: (312) 460-5652
Fax: (312) 460-7952
bharper@seyfarth.com | vCard

## Biography

**Practices & Sectors**

**Bankruptcy,
Workouts &
Business
Reorganization**

Commercial Litigation

Bankruptcy Litigation

Distressed
Transactions

Bret M. Harper is an associate in the Litigation department in the Chicago office of Seyfarth Shaw LLP.

Mr. Harper concentrates his practice on bankruptcy and workouts of distressed loans. He has represented debtors, receivers, secured creditors, trade creditors, bondholders, indenture trustees, and acquirers of distressed businesses both in court and out of court in matters involving bankruptcy litigation, workouts, restructurings, and enforcement of state law remedies. Mr. Harper also has experience representing financial institutions and other asset-based lenders in non-distressed financing transactions.

### Education

- J.D., New York University School of Law (2008)
  Articles Editor, *NYU Journal of Legislation and Public Policy*
- B.A. with honors, Northwestern University (2004)
  Hardy Scholar

### Admissions

- Illinois
- Wisconsin

### Courts

- U.S. District Courts for the Northern District of Illinois
- U.S. District Courts for the Eastern and Southern Districts of New York

### Publications

- Co-author, "State Law Offers an Alternative to Chapter 11," *National Law Journal* (Special Report) (Nov. 29, 2010)

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
   SHAW



**Michael N. Ripani**
*Counsel*
Chicago
Direct: (312) 460-5544
mripani@seyfarth.com | vCard

## Biography

**Practices & Sectors**

Commercial
Litigation

Corporate
Governance &
Compliance

Financial Services
Practice Group

Retail

**Specialty Teams**

Corporate Internal
Investigations

Michael N. Ripani is a Counsel in the Litigation Department of Seyfarth Shaw LLP's Chicago office, focusing his practice in complex commercial litigation, contract drafting and negotiation, corporate governance and compliance.

Mr. Ripani has counseled both corporate and individual clients in state and federal courts, arbitrations, mediations, and administrative proceedings in cases involving administrative law, business torts, contract law, director and officer liability, employment law, environmental law, fiduciary duty, fraud, personal injury defense, product liability, professional liability, real estate and toxic torts. He has performed an internal investigation into the potential liability of an external auditor of a publicly-held corporation for the board of directors of that entity. Mr. Ripani has drafted and negotiated contracts, requests for proposals and statements of work for clients. He has counseled clients on contract construction, interpretation and compliance with applicable federal, state, and local regulations. He also has prepared appellate briefs in Illinois Appellate Courts and the Court of Appeals for the Seventh Circuit.

Mr. Ripani is a Certified Public Accountant and a Certified Fraud Examiner. Prior to becoming an attorney, he was an auditor for the international accounting firm of PricewaterhouseCoopers, where he audited public, private and governmental entities. As an auditor, Mr. Ripani tested financial statement balances, and evaluated the financial statements for appropriate disclosures under applicable accounting principles and SEC regulations. Mr. Ripani also tested and evaluated systems of internal accounting control, and developed recommendations for improvement in controls that were reported to senior management.

While in law school, Mr. Ripani was an extern for the late Northern District of Illinois Senior District Court Judge Abraham Lincoln Marovitz. As an extern, he researched federal law and drafted judicial opinions. He also worked in the corporate law department of a publicly-held corporation during this time.

Mr. Ripani has given several presentations for the Illinois CPA Society, accounting firms and other organizations in the areas of accountant liability, document retention, director and officer liability and other risk management topics. He was a member of the Illinois CPA Society Task Force on Engagement Letters and also co-authored the chapter on accountant liability in a publication for the Illinois Institute for Continuing Legal Education.

Mr. Ripani is the Committee Chair of Hinsdale Boy Scout Troop 10 and the Treasurer and Steering Committee member of the St. Isaac Jogues Men's Group. He was a member of the Village of Hinsdale Zoning Board of Appeals, the Village of LaGrange Economic Development

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
SHAW

Advisory Commission, and the Hinsdale Central High School Reading Rocks Committee. Mr. Ripani also has been a Den Leader and Assistant Cubmaster in Hinsdale Cub Scout Pack 10, a Hinsdale AYSO head soccer coach of boys' and girls' soccer teams and has served as an advisor for Junior Achievement of Chicago.

## Education

- J.D., Chicago-Kent College of Law, Illinois Institute of Technology
  Graduated with Honors
  Member, IIT Chicago-Kent Law Review
  Recipient, Florence and Lawrence West Scholarship
  Recipient, Class Award - Personal Income Tax
  Extern for the late Northern District of Illinois Senior District Court Judge Abraham Lincoln Marovitz

- B.S. Accountancy, University of Illinois at Urbana-Champaign
  Graduated with High Honors

## Admissions

- Illinois

## Courts

- State of Illinois
- U.S. Supreme Court
- U.S. Court of Appeals for the Seventh Circuit
- U.S. District Court for the Northern District of Illinois

## Affiliations

- Adjunct Professor of Finance, Kendall College, Chicago, Illinois (Spring 2013)
- Certified Fraud Examiner
- Member, Illinois CPA Society Task Force on Engagement Letters
- Certified Public Accountant, State of Illinois

## Presentations

- Lecturer, "Client Acceptance Process and Engagement Letters," Illinois CPA Society Midwest Accounting & Finance Show, Rosemont, IL (August 2014
- Lecturer, "Engagement Considerations and Risk Management, Webcast for Illinois CPA Society (May 2014)
- "Engagement Considerations," Illinois CPA Society Government Conference, Springfield and Rosemont, IL (May 2007)
- "Document Retention," Webcast for Illinois CPA Society, Chicago, IL (November 2006 and January 2007)
- "Accountant Liability and Engagement Letters," Webcast for Illinois CPA Society, Chicago, IL (October 2006)
- "Risk Management and Liability for the Accounting Firm," RSM McGladrey Network Forum 2006, Chicago, IL (June 2006)

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership). © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

SEYFARTH
SHAW

- "Accountant Legal Liability," Illinois CPA Society Business and Technology Solutions Show, Rosemont, IL (August 2005)
- "Document Retention Policies: Are You Sure That You Want To Throw That Away?" Illinois CPA Society-North Shore Chapter, Skokie, IL (April 2005), and Chicago South Chapter, Palos Heights, IL (June 2005)
- "Director and Officer Liability," Insurance School of Chicago, Chicago, IL (June and September 2004)
- "Malpractice Risks and Defense Practices/Engagement Letter Guidance," Illinois CPA Society Business and Technology Solutions Show, Rosemont, IL (August 2001)
- "Tort Liability," Illinois Paralegal Association, Chicago, IL (October 1994)

## Publications

- Co-Author, "Accountant Liability, Suing and Defending Professionals in Illinois," Illinois Institute for Continuing Legal Education (1997)
- "Native American Free Exercise Rights in Sacred Land: Buried Once Again," American Indian Law Review, Volume 5, Issue 323 (1991)

## Community Involvement

- Committee Chair, Hinsdale Boy Scout Troop 10 (2014-present)
- Treasurer and Steering Committee Member, Saint Isaac Jogues Men's Club (2014-present)
- Member, Hinsdale Central High School Reading Rocks Committee (2013-2014)
- Cub Scout Den Leader (2007-2012); Assistant Cubmaster (2009-2012), Hinsdale Cub Scout Pack 10
- Member, Village of Hinsdale Zoning Board of Appeals (2004-2007)
- Head Coach, American Youth Soccer Organization, Boys U-6 (2006-2007)
- Head Coach, American Youth Soccer Organization, Girls U-8 (2004-2005)
- Member, Village of LaGrange Economic Development Advisory Commission (1998-2001)
- Advisor, Junior Achievement of Chicago (1983-1984)

"Seyfarth Shaw" refers to Seyfarth Shaw LLP (an Illinois limited liability partnership) © 2016 Seyfarth Shaw LLP. All rights reserved. Prior results do not guarantee a similar outcome.

# EXHIBIT 2

## CASE ADMINISTRATION

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 12/12/13 | Review petition and schedules regarding case opening and motion to retain Seyfarth (.20); confer with J. Sowka regarding same (.10). | J. McManus | 0.30 | 81.00 |
| 12/13/13 | Review/analyze bankruptcy schedules and statement of financial affairs in the S. J. Panko bankruptcy case (1.30); conduct research regarding same (.60); place call to and leave message for J. Reitman of Bridgeview Bank regarding same (.10); various conferences with G. Paloian regarding case (.30); confer with J. McManus regarding need to conduct conflicts analysis and complete form regarding acceptance of election of trustee (.10); call with R. Reitman regarding case (.20); confer with G. Paloian regarding same (.10). | J. Sowka | 2.70 | 1,093.50 |
| 12/20/13 | Confer with J. Sowka and G. Paloian regarding case strategy and motions to be prepared (.10); forward Trustee's confirmation of election in the case to UST (.10). | J. McManus | 0.20 | 54.00 |
| 12/31/13 | Prepare Sowka Affidavit in connection with motion to retain Seyfarth (.70); draft Exhibit A to same (.30). | J. McManus | 1.00 | 270.00 |
| 01/07/14 | Review schedules to determine course of action in asset investigation (.30); confer with G. Paloian and J. Sowka regarding same (.10). | J. McManus | 0.40 | 114.00 |
| 01/07/14 | Exchange emails with J. McManus and G. Paloian regarding continued date for meeting of creditors (.10); confer with J. McManus regarding same (.10). | J. Sowka | 0.20 | 86.00 |
| 01/13/14 | Prepare first case status report. | J. McManus | 0.20 | 57.00 |
| 01/13/14 | Revise Exhibit A to Sowka Affidavit. | J. McManus | 0.40 | 114.00 |
| 01/17/14 | Review amended schedules and statement of financial affairs (.20); review documents produced by Debtor's counsel regarding entities controlled by Panko (1.20). | G. Paloian | 1.40 | 910.00 |
| 01/20/14 | Review petition, schedules, tax returns and financial statement of select entities. | G. Paloian | 1.40 | 910.00 |
| 01/23/14 | Telephone conference with M. Novick (FirstMerit counsel) regarding asset investigation into Panko and business affiliates. | G. Paloian | 0.30 | 195.00 |
| 01/23/14 | Review financial documentation (financial statements) and bank account statements produced by Panko (1.90); review memorandum (.30). | G. Paloian | 2.20 | 1,430.00 |
| 01/23/14 | Download/review petition and schedules per G. Paloian's request. | J. Ziegler | 0.30 | 30.00 |
| 02/05/14 | Prepare case service list (.60); revise motion to retain Seyfarth (1.00); prepare Sowka Affidavit (1.30); revise Exhibit A to Sowka Affidavit (.20); revise service list (.10); prepare proposed retention order (.30). | J. McManus | 3.80 | 1,083.00 |

| Date | Description | Timekeeper | Hours | Value |
|---|---|---|---|---|
| 02/06/14 | Review testimony from meeting of creditors and prepare listing of additional documents requested. | G. Paloian | 2.10 | 1,365.00 |
| 02/06/14 | Revise motion to extend time to object to Debtor's discharge (.10); revise proposed Order (.10); cause motion to be filed with the Court (.20). | J. McManus | .40 | 114.00 |
| 02/06/14 | Review/revise application to retain Seyfarth (.10); confer with J. McManus regarding revisions to same (.10); review and execute affidavit in support of same (.20). | J. Sowka | 0.40 | 172.00 |
| 02/11/14 | Discuss case strategy with J. Sowka. | J. McManus | 0.20 | 57.00 |
| 02/11/14 | Prepare for hearing on retention application and motion to extend discharge deadline (.10); appear in court for hearing on same (.40); confer with G. Paloian regarding same (.10); confer with J. McManus regarding service issue regarding same (.10). | J. Sowka | 0.70 | 301.00 |
| 03/27/14 | Prepare case status report. | J. McManus | 0.40 | 114.00 |
| 03/31/14 | Review financials, tax returns and bank account statements for numerous entities (2.10); communications with N. Rugg regarding debtor supplemental documents (.20); review Second Amended SOFA (.10). | G. Paloian | 2.40 | 1,560.00 |
| 04/01/14 | Review email communications from Debtor's counsel (N. Rugg) and attachments. | G. Paloian | 0.40 | 260.00 |
| 04/02/14 | Communicate with B. Nelson regarding §341 hearing exhibits. | G. Paloian | 0.20 | 130.00 |
| 05/02/14 | Communicate with S. Panko regarding status of entity operations. | G. Paloian | 0.20 | 130.00 |
| 05/13/14 | Revise case status report. | J. McManus | 0.20 | 57.00 |
| 10/16/14 | Prepare quarterly case status report. | J. McManus | 0.20 | 57.00 |
| 12/02/14 | Prepare 4th quarter case status report. | J. McManus | 0.20 | 57.00 |
| 01/09/15 | Prepare case status report. | J. McManus | 0.20 | 60.00 |
| 01/16/15 | Revise/finalize quarterly case status report. | J. McManus | 0.20 | 60.00 |
| 01/22/15 | Prepare Motion to Retain Accountant. | J. McManus | 0.70 | 210.00 |
| 01/28/15 | Prepare Motion to Retain Popowcer Katten as estate accountants (.50); confer with G. Paloian regarding same (.10). | J. McManus | 0.60 | 180.00 |
| 01/29/15 | Revise/finalize motion to retain Popowcer Katten (.30); prepare revised service list (.30); prepare proposed Order (.10). | J. McManus | 0.70 | 210.00 |
| 01/29/15 | Review motion to employ accountant and conference with J. McManus regarding same. | B. Harper | 0.30 | 99.00 |
| 01/30/15 | Revise Motion to Retain Accountant (.20); revise service list (.10); cause Motion to be filed with the Court (.20). | J. McManus | 0.50 | 150.00 |
| 02/11/15 | Prepare for and appear at hearing for motion to retain accountant. | B. Harper | 1.00 | 330.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 04/27/15 | Prepare quarterly case status report. | J. McManus | 0.20 | 60.00 |
| 05/07/15 | Prepare quarterly case status report. | J. McManus | 0.20 | 60.00 |
| 07/21/15 | Meeting with G. Paloian regarding case status. | J. McManus | 0.10 | 30.00 |
| | **TOTAL** | | **27.50** | **$12,250.50** |

## CLAIMS ADMINISTRATION AND ANALYSIS

| Date | Description | Timekeeper | Hours | Value |
|---|---|---|---|---|
| 12/18/13 | Consult with J. McManus regarding Panko claims (.20); review schedules for additional claims information on claims that were flagged for objections (.60); enter claim detail in spreadsheet (.20). | J. Ziegler | 1.00 | 90.00 |
| 12/19/13 | Enter claims data into analysis spreadsheet. | J. Ziegler | 1.00 | 90.00 |
| 04/23/14 | Review claims. | J. McManus | 0.30 | 85.50 |
| 04/24/14 | Draft objection to exemption for broker commission (1.80); brief research regarding same (.30); draft proposed order (.30). | B. Harper | 2.40 | 792.00 |
| 04/29/14 | Revise analysis spreadsheet. | J. Ziegler | 0.20 | 20.00 |
| 05/05/14 | Call with chambers regarding continuing hearing on claim objection (.10); email debtor's counsel regarding same (.10) | B. Harper | 0.20 | 66.00 |
| 05/06/14 | Travel to and appear at hearing on objection to exemption. | B. Harper | 0.50 | 165.00 |
| 06/02/14 | Download/review claims 7, 8, 9, 10, 11 and 12 regarding potential objections (.70); confer with G. Paloian regarding same (.10); draft claims analysis spreadsheet (.50). | J. McManus | 1.20 | 342.00 |
| 06/03/14 | Update claims analysis spreadsheet. | J. Ziegler | 0.50 | 50.00 |
| 06/11/14 | Revise claims analysis spreadsheet. | J. McManus | 0.30 | 85.50 |
| 06/23/14 | Revise claims analysis spreadsheet. | J. McManus | 0.40 | 114.00 |
| 07/29/14 | Review/revise claims analysis spreadsheet. | J. McManus | 0.40 | 114.00 |
| 08/05/14 | Revise claims analysis spreadsheet (.30); confer with G. Paloian regarding same (.10); confer with J. Ziegler regarding updates regarding same (.10). | J. McManus | 0.50 | 142.50 |
| 08/05/14 | Update claims analysis spreadsheet. | J. Ziegler | 0.20 | 20.00 |
| 08/25/14 | Update claims analysis spreadsheet for B. Harper. | J. McManus | 0.30 | 85.50 |
| 08/27/14 | Confer with B. Harper regarding strategy for reclassification of lien claims. | J. McManus | 0.20 | 57.00 |
| 09/08/14 | Revise claims analysis spreadsheet (.30); confer with B. Harper regarding same (.10). | J. McManus | 0.30 | 85.50 |
| 10/29/14 | Communicate with E. Burke regarding US Bank claim against Panko. | G. Paloian | 0.20 | 130.00 |
| 12/08/14 | Review claims register (.40); analyze claims (.20). | G. Paloian | 0.60 | 390.00 |
| 12/08/14 | Update claims analysis spreadsheet (.30); confer with G. Paloian regarding same (.10). | J. McManus | 0.40 | 114.00 |
| 05/12/15 | Review claims status regarding objections resolutions. | J. McManus | 0.40 | 120.00 |

| Date | Description | Timekeeper | Hours | Value |
|---|---|---|---|---|
| 05/14/15 | Review claims (.60); communication with T. Fullerton regarding recatagorization of Lakeside Bank's claim (.20); conference with J. McManus regarding claims review and vestment (.20); claims analysis (.50); communication with K. Ameriks (Bridgeview Bank) regarding recatagorization of Bank claim (.10); review agreed order resolving Claim No. 15 (.10); communications with K. Ameriks regarding modification to order (.20). | G. Paloian | 1.90 | 1,301.50 |
| 05/14/15 | Email communication with M. Novick regarding FirstMerit Bank regarding consent to reclassify claim (.20); email communication with K. Ameriks regarding Bridgeview  Bank regarding consent to reclassify claim (.20); prepare Agreed Order regarding Bridgeview claim (.30); review other unresolved claims (.40); revise claims analysis spreadsheet (.50). | J. McManus | 1.60 | 480.00 |
| 05/15/15 | Claims analysis (.40); email communications with K. Ameriks regarding Claim No. 15 (.20); revise Agreed order Modifying Claim No. 15 (.20). | J. McManus | 0.80 | 240.00 |
| 05/18/15 | Communicate with M. Novick regarding FirstMerit consent to recharacterization of claim. | G. Paloian | 0.10 | 68.50 |
| 05/22/15 | Review/analyze unresolved claims. | J. McManus | 0.30 | 90.00 |
| 06/15/15 | Prepare Amended Proof of Claim regarding Claim No. 1 (.40); prepare Amended Proof of Claim regarding Claim No. (.40); revise claims analysis spreadsheet (.30). | J. McManus | 1.10 | 330.00 |
| 08/03/15 | Confer with G. Paloian regarding claims review status (.10); attempt to communicate with counsel for Lakeside regarding claim amendment (.10); prepare Amended Claim No. 15 (.20). | J. McManus | 0.40 | 120.00 |
| 08/04/15 | Review claims status. | J. McManus | 0.10 | 30.00 |
| 04/22/16 | Revise claims analysis spreadsheet. | J. McManus | 0.20 | 63.00 |
| | **TOTAL** | | **18.00** | **$5,881.50** |

## INVESTIGATION OF ESTATE CLAIMS/ADVERSARY PROCEEDINGS/LITIGATION

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 02/04/14 | Communicate with J. McManus and J. Sowka regarding extension of time to file §727 complaint (.20); telephone conference with counsel for creditor (Schopf Weiss) regarding deadline to file §523/727 complaints (.20); review communication from N. Rugg regarding additional document production (.20). | G. Paloian | 0.60 | 390.00 |
| 02/04/14 | Review schedules and SOFA in preparation of motion to extend time to object to debtor's discharge (.20); draft motion (.40). | J. McManus | 0.60 | 171.00 |
| 02/05/14 | Revise motion to extend time to object to Debtor's discharge (1.20); prepare order extending time to object to Debtor's discharge (.30). | J. McManus | 1.50 | 427.50 |
| 02/05/14 | Review motion to extend discharge deadline (.20); confer with J. McManus regarding revisions to same (.10). | J. Sowka | 0.30 | 129.00 |
| 02/10/14 | Review transcript of meeting of creditors (.50); communication with N. Rugg (Panko counsel) regarding additional documents to be produced (.20); review Panko owned entity financials (.60). | G. Paloian | 1.30 | 845.00 |
| 02/13/14 | Review newly produced documents. | G. Paloian | 0.60 | 390.00 |
| 02/14/14 | Review documents produced by Debtor. | G. Paloian | 0.70 | 455.00 |
| 02/17/14 | Review documents produced by debtor. | G. Paloian | 0.80 | 520.00 |
| 02/24/14 | Review objection to extension of 523/727 deadlines (.20); conference with B. Harper regarding same (.10). | G. Paloian | 0.30 | 195.00 |
| 02/25/14 | Prepare for hearing on motion to extend dischargeability deadline (.20); attend hearing on motion to extend dischargeability deadline (.50); draft revised order and circulate same per court order (.20). | B. Harper | 0.90 | 297.00 |
| 02/25/14 | Prepare order extending time to object to discharge per B. Harper. | A. Connor | 0.30 | 88.50 |
| 02/26/14 | Confer with B. Harper regarding revisions to proposed order to object to dischargeability. | J. Sowka | 0.10 | 43.00 |
| 02/28/14 | Review financial information (.50); conference with M. Ripani regarding forensic investigation/tax return review (.20). | G. Paloian | 0.70 | 455.00 |
| 02/28/14 | Meet with G. Paloian to discuss facts of case and V-Land Corp. tax return. | M. Ripani | 0.30 | 82.50 |
| 03/03/14 | Communicate with B. Harper regarding order extending time to object to discharge. | G. Paloian | 0.20 | 130.00 |
| 03/03/14 | Review debtor's petition and schedules. | M. Ripani | 0.10 | 27.50 |
| 03/05/14 | Communicate with M. Ripani regarding analysis of V-Land Corp. tax return. | G. Paloian | 0.20 | 130.00 |

| Date | Description | Timekeeper | Hours | Value |
|---|---|---|---|---|
| 03/05/14 | Continue to review and analyze debtor's voluntary petition noting schedule of related entities (.40); email communication with G. Paloian regarding management fees charged to V-Land Corporation (.20); begin to review and analyze miscellaneous financial information of V-Land Corporation (.50); continue to review and analyze debtor's voluntary petition noting schedule of related entities (.40); begin to review and analyze debtor's personal tax returns (1.90); begin to review and analyze tax returns of V-Land Corporation (holding company) (2.30). | M. Ripani | 5.70 | 1,567.50 |
| 03/12/14 | Review transcript of Panko from creditor's meeting. | M. Ripani | 0.50 | 137.50 |
| 03/14/14 | Complete analysis of V-Land Corporations' income tax returns and perform preliminary analysis of V-Land Corporation's Lakeside Bank bank statements. | M. Ripani | 1.00 | 275.00 |
| 03/27/14 | Review memorandum summarizing tax returns and other documents produced by debtor. | G. Paloian | 0.40 | 260.00 |
| 03/28/14 | Review recently produced debtor documents (.90); telephone conference with counsel for FirstMerit regarding case status and discharge objection date (.20); telephone conference with N. Rugg regarding debtor document production (.20); communicate with N. Rugg regarding breakdown of supplemental income and review of additional VLand corporation documents (.40). | G. Paloian | 1.70 | 1,105.00 |
| 04/03/14 | Communicate with B. Nelson regarding litigation against V Land Chicago Canal, V Land Bloomingdale. | G. Paloian | 0.20 | 130.00 |
| 04/04/14 | Review exemptions (Schedule C) and investigate brokerage commission (.20); communicate with N. Rugg regarding objection to exemption (.10). | G. Paloian | 0.30 | 195.00 |
| 04/09/14 | Communication with N. Rugg regarding exemption objection. | G. Paloian | 0.20 | 130.00 |
| 04/09/14 | Revise Motion to Extend time to Object to Debtor's Discharge (.10); prepare/revise proposed Order regarding same (.20); cause Motion to be filed with the Court (.20); prepare/file Amended Notice of Motion (.20). | J. McManus | 0.70 | 199.50 |
| 04/09/14 | Review order granting motion to extend discharge deadline filed by FirstMerit and forward same to B. Harper (.10); various conferences with B. Harper and G. Paloian regarding same (.10); review and revise extension motion regarding same (.10). | J. Sowka | 0.30 | 129.00 |
| 04/14/14 | Communicate with N. Rugg regarding exemption objection (regarding commission). | G. Paloian | 0.20 | 130.00 |
| 04/15/14 | Communications with N. Rugg regarding objection to exemption and purchase of entity interests. | G. Paloian | 0.40 | 260.00 |
| 04/21/14 | Review additional documents produced by Panko. | G. Paloian | 0.40 | 260.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 04/22/14 | Review Motion to Extend Time to Object to Discharge (.20); conference with J. Sowka regarding same (.10); in court for hearing (.90); conference with J. Sowka regarding results (.10). | C. Harney | 1.30 | 487.50 |
| 04/22/14 | Confer with C. Harney regarding hearing on motion to extend discharge deadline. | J. Sowka | 0.10 | 43.00 |
| 04/23/14 | Communications with N. Rugg regarding entity interests/offer. | G. Paloian | 0.20 | 130.00 |
| 04/24/14 | Conference with B. Harper regarding objection to exemption (.20); review and approve objection (.20). | G. Paloian | 0.40 | 260.00 |
| 04/25/14 | Telephone conference with N. Rugg and S. Panko regarding review of entity operations and values. | G. Paloian | 0.60 | 390.00 |
| 04/25/14 | Review objection to debtor's claim of exemption for real estate commissions. | J. Sowka | 0.10 | 43.00 |
| 05/07/14 | Communicate with N. Rugg regarding objection to exemption. | G. Paloian | 0.20 | 130.00 |
| 05/15/14 | Communicate with N. Rugg regarding lawsuit against VLand Company. | G. Paloian | 0.10 | 65.00 |
| 05/16/14 | Communications with N. Rugg regarding settlement of objection to exemption. | G. Paloian | 0.20 | 130.00 |
| 05/19/14 | Communication with N. Rugg regarding objection to exemption. | G. Paloian | 0.20 | 130.00 |
| 05/21/14 | Communicate with N. Rugg regarding VLand bankruptcy. | G. Paloian | 0.20 | 130.00 |
| 05/27/14 | Communicate with N. Rugg regarding VLand bankruptcy consideration. | G. Paloian | 0.20 | 130.00 |
| 05/28/14 | Review capital account analysis for VLand South Elgin LLC, Guinness/Wheaton LLC and Lombard Highland LLC. | G. Paloian | 0.60 | 390.00 |
| 06/02/14 | Communication with N. Rugg regarding Trustee objection to exemptions. | G. Paloian | 0.10 | 65.00 |
| 06/04/14 | Review Salinas sale agreement and payoff. | G. Paloian | 0.30 | 195.00 |
| 07/17/14 | Communicate with N. Rugg regarding objection to exemptions. | G. Paloian | 0.20 | 130.00 |
| 08/15/14 | Review schedule B regarding ownership interests. | G. Paloian | 0.20 | 130.00 |
| 08/18/14 | Communicate with B. Harper regarding objection to exemption. | G. Paloian | 0.10 | 65.00 |
| 08/18/14 | Investigate value of Panko entity interests. | G. Paloian | 0.30 | 195.00 |
| 08/18/14 | Email debtor's counsel regarding continuation of exemption hearing. | B. Harper | 0.10 | 33.00 |
| 08/20/14 | Call with N. Rugg regarding motion to approve sale and assignment (.20); conference with G. Paloian regarding same (.10). | B. Harper | 0.30 | 99.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 08/25/14 | Review settlement communications between trustee and debtor (.10); brief conference with trustee regarding form of settlement (.10); review claims and schedules regarding security interests in assets to be sold (.70); telephone call to debtor's counsel regarding same (.10). | B. Harper | 1.00 | 330.00 |
| 08/29/14 | Telephone conference with N. Rugg regarding form of settlement. | B. Harper | 0.30 | 99.00 |
| 09/08/14 | Review limited liability companies financial statements and investigate potential value of LLC interests. | G. Paloian | 0.80 | 520.00 |
| 09/11/14 | Multiple calls with N. Rugg regarding affidavit to settlement agreement (.40); conference with G. Paloian regarding same (.10); review affidavit in support of settlement agreement (.30) | B. Harper | 0.80 | 264.00 |
| 09/16/14 | Conference with B. Harper regarding approval of motion and affidavit and withdrawal of objection to exemption. | G. Paloian | 0.20 | 130.00 |
| 10/07/14 | Prepare for hearing on motion to approve settlement with debtor (1.00); appear at hearing regarding same (1.10). | B. Harper | 2.10 | 693.00 |
| 10/15/14 | Confer with Chambers regarding dismissing hearing on Objection to Debtor's Claim Exemption (.10); prepare Notice of Withdrawal of Objection (.30); revise ECF service list (.10); cause same to be filed with the Court (.10). | J. McManus | 0.60 | 171.00 |
| | **TOTAL** | | **33.30** | **15,132.00** |

### SALE OF ASSETS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 06/09/14 | Communications with S. Panko regarding Salina contract questions. | G. Paloian | 0.20 | 130.00 |
| 06/12/14 | Communicate with S. Panko regarding sale of LLC interests. | G. Paloian | 0.20 | 130.00 |
| 06/25/14 | Telephone conferences with S. Panko, Bruce Paradise (Lombard), Joe Brady (Wheaton), Jeff Raimo (Warrenville) and Paul Utigard (Elgin) regarding purchase of Steve Panko interest in projects. | G. Paloian | 0.90 | 585.00 |
| 06/26/14 | Telephone conference with S. Panko and Paul Utigard regarding Elgin development value and interest in purchasing Panko LLC interests. | G. Paloian | 0.50 | 325.00 |
| 07/01/14 | Communicate with J. Brody regarding interest in Guiness/Wheaton LLC. | G. Paloian | 0.20 | 130.00 |
| 07/18/14 | Communicate with J. Brady regarding sale of Guiness Wheaton interest (.20); investigate value of Guiness Wheaton project (.30). | G. Paloian | 0.50 | 325.00 |
| 07/21/14 | Communicate with S. Panko regarding updated financials for Guiness/Wheaton. | G. Paloian | 0.20 | 130.00 |
| 07/22/14 | Investigate value of Guiness Wheaton. | G. Paloian | 0.20 | 130.00 |
| 07/31/14 | Communicate with R. Homme regarding value of Guiness/Wheaton. | G. Paloian | 0.20 | 130.00 |
| 08/01/14 | Communicate with R. Homme regarding valuation of Guiness/Wheaton. | G. Paloian | 0.20 | 130.00 |
| 08/06/14 | Communications with J. Brody regarding Guinness/Wheaton valuation and management. | G. Paloian | 0.30 | 195.00 |
| 08/12/14 | Investigate claims against V-Land (.30); communicate with S. Panko regarding sale of membership interests (.20). | G. Paloian | 0.50 | 325.00 |
| 08/14/14 | Review offer to purchase estate interests from S. Panko. | G. Paloian | 0.20 | 130.00 |
| 08/15/14 | Communicate with S. Panko regarding Antioch BB LLC notice of default. | G. Paloian | 0.20 | 130.00 |
| 08/19/14 | Communicate with S. Panko regarding proposed short sale of Antioch real estate and review of proposal. | G. Paloian | 0.40 | 260.00 |
| 08/20/14 | Telephone conference with S. Panko regarding Antioch project vacancy, short sale and offers to purchase LLC and entity interests (.30); investigate value of schedule assets (.30). | G. Paloian | 0.60 | 390.00 |
| 08/25/14 | Communications with B. Harper regarding sale of estate LLC interests and receivables. | G. Paloian | 0.30 | 195.00 |
| 09/02/14 | Communicate with S. Panko regarding sale agreement (.10); conference with B. Harper regarding sale agreement revisions (.20). | G. Paloian | 0.30 | 195.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 09/03/14 | Draft sale agreement between trustee and debtor (4.80); draft motion to approve sale agreement (1.80). | B. Harper | 6.60 | 2,178.00 |
| 09/04/14 | Review and comment on sale agreement with Panko and motion to approve sale (.40); conference with B. Harper regarding Panko affidavit in support of "no value" assertion (.20); communicate with S. Panko regarding status of settlement/purchase agreement (.20). | G. Paloian | 0.80 | 520.00 |
| 09/04/14 | Draft and revise motion to approve sale agreement (2.10); draft proposed order regarding same (1.40); revise sale agreement (.60); conference with G. Paloian regarding same (.10): email debtor's counsel regarding same (.10). | B. Harper | 4.30 | 1,419.00 |
| 09/10/14 | Communicate with S. Panko regarding Antioch BB proposed sale settlement between Estate and Panko (.20); review and revise sale/settlement agreement (.30); conference with B. Harper regarding Panko factual support for motion (.20). | G. Paloian | 0.70 | 455.00 |
| 09/10/14 | Telephone calls with N. Rugg regarding comments to sale agreement (.30); conference with G. Paloian regarding sale agreement (.10); draft revisions to sale agreement (2.60); review and revise sale motion and proposed order to reflect revised sale agreement (.50). | B. Harper | 3.50 | 1,155.00 |
| 09/11/14 | Review and revise Steve Panko affidavit in support of motion to sell interests (.30); conference with B. Harper regarding same (.20); communications with N. Rugg regarding additional details for affidavit (.30). | G. Paloian | 0.80 | 520.00 |
| 09/15/14 | Conferences with B. Harper regarding Panko affidavit in support of sale motion. | G. Paloian | 0.30 | 195.00 |
| 09/15/14 | Finalize sale motion, proposed order and affidavit (.80); email N. Rugg regarding same (.10). | B. Harper | 0.90 | 297.00 |
| 09/16/14 | Review final Panko affidavit. | G. Paloian | 0.20 | 130.00 |
| 09/16/14 | Conference with G. Paloian regarding revised affidavit in support of sale (.10); email N. Rugg regarding filing (.10). | B. Harper | 0.20 | 66.00 |
| 09/16/14 | Prepare sale motion for filing per B. Harper (.70); prepare proposed order (.30); follow up regarding hearing date, time (.30); effect filing (.10); calendar hearing (.10); arrange for service (.10). | A. Connor | 1.60 | 472.00 |
| 09/16/14 | Confer with G. Paloian regarding terms of sale motion. | J. Sowka | 0.20 | 86.00 |
| 10/07/14 | Conference with B. Harper regarding court approval of sale motion and closing details. | G. Paloian | 0.20 | 130.00 |
| 10/07/14 | Conferences with N. Panko and G. Paloian regarding closing. | B. Harper | 0.20 | 66.00 |
| 10/14/14 | Communication with B. Harper regarding Panko purchase proceeds and settlement effectuation. | G. Paloian | 0.20 | 130.00 |
| 10/15/14 | Email N. Panko regarding closing sale agreement. | B. Harper | 0.10 | 33.00 |

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 11/02/15 | Draft Report of Sale of Equity Interest. | J. Ziegler | 0.50 | 50.00 |
| 02/15/16 | Communicate with R. Schultz regarding V-Land assets/ownership. | G. Paloian | 0.20 | 139.00 |
| | **TOTAL** | | **27.60** | **$12,006.00** |

## FEE APPLICATIONS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 12/08/14 | Revise Fee Application detail. | J. McManus | 0.30 | 85.50 |
| 01/15/15 | Prepare Seyfarth Fee Application. | J. McManus | 0.50 | 150.00 |
| 02/10/15 | Review/edit time detail regarding final fee application. | J. McManus | 0.50 | 150.00 |
| 05/20/15 | Prepare final trustee fee application. | J. McManus | 0.60 | 180.00 |
| 08/25/15 | Revise Seyfarth Fee Application, Exhibit 2. | J. McManus | 0.70 | 210.00 |
| 09/21/15 | Revise Seyfarth Final Fee Application. | J. McManus | 0.90 | 270.00 |
| 10/01/15 | Revise Seyfarth Fee Application. | J. McManus | 0.60 | 180.00 |
| 11/10/15 | Prepare Trustee Fee Application. | J. McManus | 0.70 | 210.00 |
| 11/13/15 | Revise Trustee Fee Application. | J. McManus | 0.70 | 210.00 |
| 12/16/15 | Revise Final Seyfarth Fee Application. | J. McManus | 0.70 | 210.00 |
| 12/17/15 | Revise Seyfarth Fee Application. | J. McManus | 0.80 | 240.00 |
| 01/14/16 | Revise Seyfarth Fee Application. | J. McManus | 0.70 | 220.50 |
| 04/22/16 | Revise Trustee Fee Application. | J. McManus | 0.70 | 220.50 |
| 5/27/16 | Finalize Seyfarth Fee Application in preparation for case closing. | J. McManus | 2.00 | 630.00 |
| 5/27/16 | Finalize Trustee Fee Application in preparation for case closing. | J. McManus | 1.00 | 315.00 |
| | **TOTAL** | | **11.40** | **$3,481.50** |

**Total Fees** $48,751.50

| Description | Hours | Value |
|-------------|-------|-------|
| Case Administration | 27.50 | $12,250.50 |
| Claims Administration and Analysis | 18.00 | $5,881.50 |
| Investigation of Estate Claims/Adversary Proceedings/Litigation | 33.30 | $15,132.00 |
| Sale of Assets | 27.60 | $12,006.00 |
| Fee Applications | 11.40 | $3,481.50 |
| **TOTAL** | **117.80** | **$48,751.50** |

# EXHIBIT 3

## DISBURSEMENTS

### Copying

| Date | Disbursements | Value |
|------|--------------|-------|
| 02/06/14 | Copying  (1,984 copies @ $0.10 per page) | 198.40 |
| 04/02/14 | Copying  (422 copies @ $0.10 per page) | 42.20 |
| 09/16/14 | Copying  (1,266 copies @ $0.10 per page) | 126.60 |
| 01/30/15 | Copying  (650 copies @ $0.10 per page) | 65.00 |
| 05/15/15 | Copying  (77 copies @ $0.10 per page) | 7.70 |
| 05/20/15 | Copying  (3 copies @ $0.10 per page) | 0.30 |
| 05/28/15 | Copying  (13 copies @ $0.10 per page) | 1.30 |
| 06/11/15 | Copying  (2 copies @ $0.10 per page) | 0.20 |
| 08/11/15 | Copying  (42 copies @ $0.10 per page) | 4.20 |
| 08/18/15 | Copying  (128 copies @ $0.10 per page) | 12.80 |
| 08/19/15 | Copying  (30 copies @ $0.10 per page) | 3.00 |
| 08/26/15 | Copying  (1 copies @ $0.10 per page) | 0.10 |
| 10/30/15 | Copying  (25 copies @ $0.10 per page) | 2.50 |
| 11/02/15 | Copying  (44 copies @ $0.10 per page) | 4.40 |
|  |  | **$468.70** |

### Online Research

| Date | Disbursements | Value |
|------|--------------|-------|
| 04/28/14 | Online Research - PACER SERVICE CENTER - Pacer Charges 1st Quarter 2014 | 4.50 |
| 07/24/14 | Online Research - PACER SERVICE CENTER - Pacer Charges 2nd Quarter 2014 | 13.00 |
| 11/17/14 | Online Research - PACER SERVICE CENTER - Pacer Charges 3rd Quarter 2014 | 18.90 |
| 02/17/15 | Online Research - PACER SERVICE CENTER - Pacer Charges 4th Quarter 2014 | 3.40 |
| 08/31/15 | Online Research - PACER SERVICE CENTER - Pacer Charges 2nd Quarter 2015 | 11.90 |
|  |  | **$51.70** |

**Total Disbursements**                                                                                    **$520.40**